IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD BIGSBY,

        Plaintiff,

v.                                                                  No. 1:12-CV-1207 CG

CAROLYN W. COLVYN, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* and Plaintiff's *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* (together the "Motion"), filed on July 19, 2013, (Doc. 21; Doc. 22); *Defendant's Response to Plaintiff's Motion to Reverse and Remand* ("Response"), filed on September 17, 2013, (Doc. 23); and Plaintiff's *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* ("Reply"), filed on September 30, 2013, (Doc. 24).

      On January 26, 2009, Richard C. Bigsby filed an application for disability insurance benefits alleging disability beginning May 20, 2007. (Administrative Record ("AR") at 116–17). His application was denied on April 29, 2009, (AR at 88–91), and also upon reconsideration on July 17, 2009, (AR at 10, 93–95). Mr. Bigsby filed his request for a hearing on September 14, 2009, (AR at 10); the hearing occurred on May 3, 2010 before Administrative Law Judge ("ALJ") Barbara L. Perkins. (AR at 24-40). Mr. Bigsby and Karen N. Provine, an impartial vocational expert, testified at the hearing. (AR at 10).

The ALJ issued her opinion on June 20, 2011, finding that Mr. Bigsby is not disabled under 20 C.F.R. § 404.1520(g). (AR at 22). Mr. Bigsby filed an application for review by the Appeals Council, which was summarily denied, (AR at 1–5), making the decision of ALJ Perkins the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Bigsby complains that ALJ Perkins committed reversible, legal error by: (1) failing to apply the correct legal standard when she evaluated the medical opinion of Mr. Bigsby's treating physician; (2) failing to accord the appropriate weight to the medical opinion of one of the state agency's consulting physicians; and (3) making a residual functional capacity finding unsupported by substantial evidence in the record. (Doc. 22 at 1).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge did not apply the correct legal standard when she discounted the medical opinion of Mr. Bigsby's treating physician, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court orders that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were

applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security

income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Bigsby initially applied for disability benefits alleging debilitating knee and back conditions, asthma, post-traumatic stress disorder ("PTSD"), anxiety, and sleep disturbances. (AR at 147). At the hearing, Mr. Bigsby testified that those impairments

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

inhibit his ability to stand, walk, and sit for periods of time, and that lifting and carrying objects induces back pain. (AR at 65–69, 74–76). The administrative record includes his medical records, earnings records, work history report, disability application, hearing testimony, and non-examining state agency evaluations, which were used by the ALJ to evaluate Mr. Bigsby's disability claim.

### A. *The ALJ Decision*

At step one, ALJ Perkins determined Mr. Bigsby met the insured status requirement through December 31, 2013, and that he had not engaged in substantial gainful activity since his alleged onset date of disability. (AR at 12). At step two, the ALJ concluded Mr. Bigsby is severely impaired with multilevel lumbar degenerative disc disease, a pain disorder, and PTSD, but found Mr. Bigsby's knee impairment and asthma to be non-severe. (AR at 12). At step three, the ALJ determined that none of Mr. Bigsby's impairments, solely or in combination, equal one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. (AR at 12). The ALJ proceeded to step four, and made residual functional capacity ("RFC") findings that Mr. Bigsby can perform a limited range of sedentary work as defined in 20 C.F.R. 404.1567(a), with some restrictions. (AR at 14). At step five, ALJ Perkins considered the testimony of the vocational expert, found that Mr. Bigsby is capable of performing work that exists in significant numbers in the national economy, and concluded that he is not disabled. (AR at 22).

### 1. *Mr. Bigsby's Testimony*

In making the RFC determination, the ALJ first considered Mr. Bigsby's testimony regarding his symptoms. The ALJ acknowledged that Mr. Bigsby testified to experiencing

chronic low-back pain radiating to his legs, upper back, and arms, and that sometimes his hands go numb and he cannot feel how hard he is grasping an object. (AR at 15). The ALJ noted that Mr. Bigsby testified he is able to sit between fifteen and thirty minutes at a time before having to change position. (AR at 15). The ALJ also cited Mr. Bigsby's testimony that he can only walk between fifteen and thirty minutes at a time before having to change position, and can only stand in one place for ten minutes at a time. (AR at 15). The ALJ further discussed Mr. Bigsby's testimony that he suffers from PTSD, panic attacks three times per day, has difficulty sleeping, and has a very deep ache in his knees which is like an "in the bone" feeling that causes him to fall down. (AR at 15).

2.  *Objective Medical Evidence Considered by the ALJ*

The ALJ proceeded to discuss the objective medical evidence in the record, consisting of treatment notes and reports of various doctors and health care professionals. The ALJ first discussed an MRI study taken of Mr. Bigsby's's spine on July 19, 2007. (AR at 16) (citing AR at 234–35). ALJ Perkins noted that Radiologist Ronald I. Landau, M.D. reviewed the film and concluded Mr. Bigsby had some neural encroachment and disc bulging in his spine, but no significant spinal stenosis or neural foraminal stenosis. (AR at 16). The ALJ commented that Richard N. Castillo, M.D., an examining, non-treating physician, also reviewed the July 19, 2007 film and similarly concluded that it showed a relatively normal spine, with no evidence of significant disc rupture, nerve root impingement, disc herniation, or stenosis; Dr. Castillo diagnosed Mr. Bigsby with chronic low back pain and marked symptom magnification based on four out of five Waddell's signs consisting of tenderness, simulation, distraction, and overreaction. (AR at 16) (citing AR at 230–31). ALJ Perkins did not indicate what weight

6

she gave Dr. Landau or Dr. Castillo's opinion.

The ALJ turned to the February 1, 2008 report by Anthony P. Reeve, M.D, another examining, non-treating physician. The ALJ noted that Dr. Reeve determined Mr. Bigsby could return to work, but restricted him to "medium duty" and not lifting, pushing, or pulling more than forty pounds. (AR at 17) (citing AR at 238–39). The ALJ also commented that Dr. Reeve found Mr. Bigsby to be at maximum medical improvement. (AR at 17) (citing AR at 238–39). ALJ Perkins did not indicate what weight she gave Dr. Reeve's evaluation.

ALJ Perkins next discussed the April 6, 2009 report of State agency physician Joseph Aragon, M.D. ("Dr. Aragon"). ALJ Perkins noted that Dr. Aragon diagnosed Mr. Bigsby with significant lumbar back problems, but opined he can lift or carry twenty pounds occasionally and ten pounds frequently. (AR at 17) (citing AR at 698). The ALJ noted that Mr. Bigsby reported to Dr. Aragon that he can stand between twenty and thirty minutes at one time and a total of four hours over an eight-hour period, and can sit between twenty and thirty minutes at a time. (AR at 15). Dr. Aragon evaluated Mr. Bigsby, and opined that Mr. Bigsby is able to stand less than two hours in an eight-hour workday, cannot sit for very long and must periodically alternate between sitting and standing, can occasionally kneel or crouch but not crawl or stoop, is limited in his pushing and pulling abilities, and cannot climb ladders, ropes, or scaffolds. (AR at 17) (citing AR at 696–98). As the ALJ noted, all the limitations ascribed by Dr. Aragon are due to the pain the activity causes Mr. Bigsby in his back and knees. (AR at 17). ALJ Perkins concluded that she would give "great weight" to Dr. Aragon's report, but no more, "since a standing limitation of less than two hours is overly restrictive." (AR at 17).

7

Next, ALJ Perkins discussed the April 28, 2009 physical RFC assessment made by State agency consulting physician Janice Kando, M.D. (AR at 17) (citing 701–708). The ALJ noted that Dr. Kando found that Mr. Bigsby could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of at least two hours in an eight-hour work day, and sit for a total of approximately six hours in an eight-hour work day. (AR at 17) (citing AR at 702). The ALJ noted that Dr. Kando opined Mr. Bigsby could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; stoop; kneel; crouch; and crawl. (AR at 17) (citing AR at 703). Without explanation, ALJ Perkins determined that she would give Dr. Kando's evaluation "substantial weight," except for Dr. Kando's lifting limitation of twenty pounds, which ALJ Perkins did not think sufficiently restrictive in light of the entire record. (AR at 17).

ALJ Perkins then discussed the treatment notes of Claude D. Gelinas, M.D., P.C. made August 31, 2009. (AR at 18). According to the ALJ, Dr. Gelinas' examination of Mr. Bigsby showed he had no focal motor weakness, a negative straight-leg raising test bilaterally, a grossly normal sensory exam, but indicated he suffers from multi-level degenerative disc disease. (AR at 18) (citing AR at 738–39). The ALJ noted that Dr. Gelinas wrote that Mr. Bigsby had a history of non-severe, intermittent back pain. (AR at 18) (citing AR at 738).

Last, ALJ Perkins discussed the March 9, 2010 Medical Source Statement by Mr. Bigsby's treating physician, Carlos Esparza, M.D. The Medical Source Statement is an RFC evaluation by Dr. Esparza, in which he limited Mr. Bigsby to siting for up to fifteen minutes at a time and for three hours total in an eight-hour work day, and standing or walking for less than fifteen minutes at a time and for less than a total of one hour in an

eight-hour work day. (AR at 18) (citing AR at 724–30). The ALJ noted that Dr. Esparza concluded that Mr. Bigsby would need to lie down and rest for at least one hour total in an eight-hour work day, and limited Mr. Bigsby to carrying no more than five pounds frequently and ten pounds occasionally. (AR at 18) (citing AR at 727–28). Finally, the ALJ noted that Dr. Esparza determined that Mr. Bigsby would have to miss work at least one day per month because of his impairments and ongoing treatment. (AR at 18) (citing AR at 730). Even though the record contains Dr. Esparza's treatment notes from October 15, 2009 onward, ALJ Perkins only discussed Dr. Esparza's Medical Source Statement. (AR at 18). The ALJ gave Dr. Esparza's opinion "limited weight," because it was "overly restrictive" compared to the evaluations of "specialists in rehabilitative medicine" and Dr. Castillo. (AR at 18) (citing AR at 230–31, 238, 241).

ALJ Perkins also discussed the medical treatment notes, reports, and RFC findings made by various mental health professionals. (AR at 18–19). Since Mr. Bigsby has not raised any points of error in connection with the ALJ's mental limitations, discussion and analysis of those are unnecessary. The ALJ made a credibility determination surrounding one of his mental RFC evaluations—the ALJ found that Mr. Bigsby was not entirely forthcoming with an evaluating psychologist, which reflected negatively on his overall credibility. (AR at 20).

### 3.  *Treatment and Daily Activities*

After discussing the objective medical evidence in the record, ALJ Perkins considered other factors such as Mr. Bigsby's medical treatment and daily activities. (AR at 19).

ALJ Perkins pointed out that Mr. Bigsby has walked with a cane for three years

even though it is not medically required. (AR at 19, 20). She noted that between January 8, 2008 and August 17, 2009, Mr. Bigsby ceased various pain-management treatments, and never had surgery for his back condition. (AR at 19, 20). She reiterated that he had testified at the hearing that prescription pain medicine and injections do little to take away his pain, that he stretches up to four hours every day to relieve pain, and is going to a pain management doctor and had been to a rehabilitation center. (AR at 19–20).

The ALJ noted that Mr. Bigsby told Dr. Aragon on April 4, 2009 that he takes between one to three naps per day, does household chores, but does not go shopping or mow the lawn. (AR at 20) (citing AR at 696). The ALJ commented this contradicts with what he said on February 1, 2009—that he goes shopping and mows the lawn with a riding lawnmower. (AR at 178–79). Mr. Bigsby's wife stated that Mr. Bigsby regularly attends their son's Boy Scout meetings and basketball games, does household chores, drives their son home from school, and applies for jobs. (AR at 20) (citing AR at 165–73).

### 4. RFC Determination

The ALJ determined that the objective medical evidence is consistent with Mr. Bigsby's ability to perform a limited range of sedentary work. (AR at 16). Specifically, she found that Mr. Bigsby could perform sedentary work as follows: (1) lifting and carrying ten pounds frequently; (2) sitting for six hours of an eight-hour work day and thirty minutes at a time before requiring a brief change of position; (3) standing and/or walking for two hours of an eight-hour work day before requiring a brief change of position; (4) occasionally climbing ropes, ladders, and scaffolds, and ramps and stairs; (5) occasionally balancing, stooping, kneeling, crouching, and crawling; (6) avoiding concentrated exposure to certain environmental irritants; and (7) infrequent interaction

with co-workers, supervisors, and the public. (AR at 14–15, 20).

ALJ Perkins concluded that while Mr. Bigsby's medically-determinable impairments could reasonably cause his alleged symptoms, his statements as to his symptoms' intensity, persistence and limiting effects were not credible to the extent they conflict with her RFC determination. (AR at 16). In making her findings, the ALJ was specifically persuaded by Dr. Reeve's assessment that authorized Mr. Bigsby to return to "medium duty" work, as well as Dr. Castillo's diagnosis that Mr. Bigsby was experiencing "marked symptom magnification" and had no significant neurological deficits and "basically normal" MRI results. (AR at 20). The ALJ said she had observed that Mr. Bigsby only stood up at the hearing after his attorney told him he could do so. (AR at 15). She explained that Mr. Bigsby's failure to be completely honest with the examining psychologist negatively affected his credibility. (AR at 20). She also stated that she considered other factors, such as Mr. Bigsby's medical treatment and daily activities, but they did not affect her RFC determination.

   5.   *Past Relevant Work Analysis and Step Five*

ALJ Perkins proceeded to determine whether Mr. Bigsby could perform his "past relevant work" as a contractor, a billiard table assembler, a van driver, and a painter. (AR at 20). Since those jobs are classified as either light, heavy, or medium work, the ALJ concluded Mr. Bigsby could not perform his past relevant work, and proceeded to step five of the sequential analysis.

The ALJ explained that Ms. Provine, the vocational expert, had described the jobs of "document preparer," "stone setter," and "final assembler" as meeting the requirements of sedentary work as restricted by the ALJ's RFC assessment. (AR at 21).

Ms. Provine also testified that Mr. Bigsby would not be affected by the use of a cane, or being absent from work one day per month, in doing those jobs. (AR at 22). The ALJ also cited Ms. Provine's testimony that the jobs do not require any stooping. The ALJ noted that Ms. Provine's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (AR at 22). ALJ Perkins reasoned that since Mr. Bigsby was capable of performing work that exists in significant numbers in the national economy, he is not disabled. (AR at 22).

Mr. Bigsby submitted additional evidence to the Appeals Council, consisting of a brief written by Michelle Baca, Esq. (AR at 210–17). That evidence was incorporated into the record and considered by the Appeals Council, but did not provide a basis for changing the ALJ's decision. This Court must consider the entire record, including the additional evidence, in conducting the substantial evidence review. *Martinez v. Barnhart*, 444 F.3d 1201, 1208, 164 Fed. Appx. 725 (10th Cir. 2006).

### B. *Points of Error*

In his Motion, Mr. Bigsby alleges ALJ Perkins committed several reversible errors. Mr. Bigsby contends that: (1) ALJ Perkins violated the treating physician rule by applying an improper legal standard when she evaluated Dr. Esparza's opinion; (2) ALJ Perkins impermissibly ignored the opinion of Dr. Aragon, the State agency physician, with regards to Mr. Bigsby's ability to stand; and (3) ALJ Perkins' RFC determination and step five findings are not supported by substantial evidence, because the hypothetical questions the ALJ posed to the vocational expert did not include all of Mr. Bigsby's functional limitations. (Doc. 22 at 1). The Commissioner responds that ALJ Perkins properly discounted the opinions of both Dr. Esparza and Dr. Aragon, and therefore did

not need to ask the vocational expert hypothetical questions based on all of the functional limitations they placed on Mr. Bigsby. (Doc. 23).

**IV. Analysis**

In his first point of error, Mr. Bigsby argues that ALJ Perkins violated the treating physician rule because she did not apply the correct legal standard when she considered the medical opinion of his treating physician, Dr. Esparza. (Doc. 22 at 6). He further contends the ALJ did not afford Dr. Esparza's opinion the proper weight or provide sufficiently specific reasons for her decision to give Dr. Esparza's opinion "limited weight." Defendant does not dispute that Dr. Esparza is Mr. Bigsby's treating physician, but maintains the ALJ did not commit legal error because she provided specific, legitimate reasons for discounting Dr. Esparza's opinion.

  A. <u>Treating Physician Rule</u>

The Social Security regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.157(d). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); Social Security Ruling ("SSR") 96-6p, 1996 SSR LEXIS 3, at *5–6).

The ALJ should accord opinions of treating physicians "controlling weight" when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. § 404.1527(c)(2); *Langley*, 373

F.3d at 1119. A treating physician's opinion is accorded "controlling weight" because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Doyal*, 331 F.3d at 762 (citing 20 C.F.R. § 416.927(d)(2)). When an ALJ determines that a treating physician's opinion is inconsistent with other medical evidence, the ALJ must "examine the other physicians' reports to see if they outweigh the treating physician's report . . . ." *Hamlin*, 365 F.3d at 1215 (quotation omitted).

If a treating physician's opinion does not meet the "treating physician rule" standard—meaning it is not supported by medical evidence or not consistent with the record—it may still receive deference. SSR 96-2p, 1996 SSR LEXIS 9 at *9 (1996). The level of deference the treating physician's opinion receives must be determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. § 404.1527(c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations ommitted).

### B.    *The ALJ Did Not Provide Sufficiently Specific Reasons*

In sum, the ALJ must follow two steps if she wishes to accord a treating

14

physician's opinion less than "controlling weight." First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record. Next, she must determine what deference she will accord the opinion after considering the factors listed above, and state sufficiently specific reasons for that determination. Her determination, like all of her findings, must be supported by substantial evidence. Failure to apply the proper standard amounts to reversible legal error.

In her decision, the ALJ stated, "I accord Dr. Esparza's evaluation limited weight, since it is overly restrictive when compared to the functional capacities evaluation of specialists in rehabilitative medicine ([AR at 238, 241]) and the evaluation by Dr. Castillo at [AR at 230–31] as summarized above." (AR at 18). Mr. Bigsby argues this statement does not constitute a reasoned finding, or sufficiently explain her deference determination. (Doc. 22 at 8). Defendant argues that substantial evidence and applicable law support the ALJ's evaluation of Dr. Esparza's opinion. (Doc. 23 at 5).

ALJ Perkins failed to give reasons why Dr. Esparza's opinion was not afforded "controlling weight"—she did not state whether she found the opinion to be unsupported by medical evidence or inconsistent with the substantial evidence in the record. Her only statement was that Dr. Esparza's opinion was "overly restrictive" compared to the evaluations of non-treating physicians. (AR at 18). The statement does not reflect consideration of any of the six "deference" factors either. Rather, her reasoning is entirely conclusory, and not sufficiently specific enough to make her reasoning clear to this Court. The Court will further analyze those portions of the record to which she referred, in light of Defendant's arguments that the ALJ provided specific, legitimate

reasons for her determination.

The ALJ found that Dr. Esparza's opinion was "overly restrictive when compared to the functional capacities evaluation of specialists in rehabilitative medicine ([AR at 238, 241])." (AR at 18). That part of the record consists of a superficial summary of Mr. Bigsby's RFC test results and a medical release to return to work written by Dr. Reeve. (AR at 238, 241). The test results themselves are not part of the record. Dr. Reeve gave Mr. Bigsby permission to return to "medium duty" work on the condition that he not lift, push, or pull more than forty pounds. (AR at 238, 241). Defendant argues Dr. Reeve's release of Mr. Bigsby back to "medium duty" work contradicts Dr. Esparza's evaluation of "more restrictive limitations . . . ." (Doc. 23 at 6). Defendant argues that this means the ALJ gave sufficiently specific reasons for her determination. However, the ALJ did not actually make that exact argument, and as Mr. Bigsby points out, did not even specifically refer to Dr. Reeve. Further, this Court can only identify one instance where Dr. Esparza's evaluation is more restrictive than Dr. Reeve's. Dr. Reeve authorized Mr. Bigsby to lift, push, or pull up to forty pounds, and Dr. Esparza authorized Mr. Bigsby to lift or carry up to ten pounds. However, the ALJ actually adopted Dr. Esparza's recommendation, instead of Dr. Reeve's, with regard to that issue. (AR at 14).

The ALJ also stated Dr. Esparza's opinion was "overly restrictive when compared to . . . the evaluation by Dr. Castillo at [AR at 230–31] as summarized above." (AR at 18). ALJ Perkins summarized Dr. Castillo's opinion thusly: (1) Dr. Castillo found an MRI of Mr. Bigsby's spine to be basically normal; (2) Dr. Castillo determined Mr. Bigsby had no significant disc rupture, nerve root impingement, significant disc herniation, or stenosis; and (3) Dr. Castillo diagnosed Mr. Bigsby with chronic low back pain and marked

symptom magnification. (AR at 16).

Defendant reasons that Dr. Castillo's assessment of marked symptom magnification, and advice to engage in rehabilitation programs and symptom control, directly contradicts Dr. Esparza's evaluation. (Doc. 23 at 6). The Court does not agree with that argument for several reasons. First, the ALJ did not mention rehabilitation programs and symptom control in her summary of Dr. Castillo's opinion. Second, Dr. Castillo made an open-ended finding of marked symptom magnification, commenting "I am not sure what effect that might have on [Mr. Bigsby's] overall prognosis." (AR at 231). Third, Dr. Castillo did not make any findings as to Mr. Bigsby's functional limitations, which is the thrust of Dr. Esparza's Medical Source Statement. The ALJ did not make the argument that Defendant claims she did. Therefore, the Court is unconvinced by Defendant's argument, and cannot identify the reason why the ALJ found Dr. Esparza's evaluation to be more restrictive than Dr. Castillo's.

Last, Defendant urges the Court to view the ALJ's determination "within the context of the record." (Doc. 23 at 5). In a separate portion of her decision, the ALJ determined the Plaintiff was not credible as to the severity of his symptoms. Defendant argues the credibility determination of Plaintiff was a reason the ALJ discounted Dr. Esparza's opinion. The Court has reviewed the entire decision, and the ALJ never made a connection between the veracity of Dr. Esparza's opinion and Plaintiff's credibility.

Defendant's arguments cannot save the ALJ's determination because they require the Court to stray from the four corners of the decision. The Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in post hoc rationalization. *Robinson*, 366 F.3d at

1084–85. Therefore, the Court finds that the ALJ failed to state with sufficient specificity her reasons for discounting Dr. Esparza's opinion.

### C.     ALJ Perkins Applied an Erroneous Legal Standard

In this case, the ALJ accorded "limited weight" to the treating physician's opinion because she claimed it conflicted with the opinions of non-treating physicians. When an ALJ determines that a treating physician's opinion is inconsistent with other physicians' opinions, as is the case here, the ALJ must "examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin*, 365 F.3d at 1215 (quotation omitted). This is because, generally, the treating physician's opinion is entitled to the most weight, followed by that of the non-treating, examining physician; the State agency non-examining physician is entitled to the least weight of all. *Robinson*, 366 F.3d at 1084. Failure to properly weigh the evidence is reversible, legal error. *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).

ALJ Perkins was silent about the weight she assessed the non-treating physicians' opinions. In effect, the ALJ gave greater deference to the opinions of Dr. Reeve and Dr. Castillo, but did not reveal how much deference she had given to them or why. The Court finds that ALJ Perkins applied an erroneous legal standard because she examined Dr. Esparza's opinion to see if it outweighed the non-treating physicians' opinions of Dr. Reeve and Dr. Castillo, and not the other way around. Therefore, ALJ Perkins erred by failing to apply the correct legal standard in making her determination.

The ALJ did not give adequate reasons for discounting Dr. Esparza's opinion, and applied an erroneous legal standard in doing so. Therefore, the ALJ did not adequately consider Dr. Esparza's opinion, and erred by discounting that opinion when she made

18

her RFC assessment. Several of her factual findings with respect to Mr. Bigsby's physical limitations are either not supported by the substantial evidence in the record or are insufficiently specific to allow meaningful review. Because of the ALJ's failure to follow the correct legal standards in considering the opinion of Mr. Bigsby's treating physician, the Court remands this case for further proceedings.

### V. Conclusion

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ did not follow the correct legal standards in considering Dr. Esparza's opinion, and the reasons she gave for according this opinion "limited weight" are not supported by substantial evidence. The Court does not decide any other issue raised by Mr. Bigsby on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Mr. Bigsby's *Motion to Reverse or Remand Administrative Agency Decision* (Doc. 21) be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE